Per Curiam.

The defendant’s chief assignment of error is that the judgment of the trial court was rendered under the influence of passion and prejudice and that hence he was denied his constitutional right to a fair and impartial trial.
The defendant, a negro, complains that the trial *413 court was prejudiced against Mm; that this prejudice was demonstrated throughout the trial; that the trial court browbeat and intimidated the defense witnesses; that the trial court repeatedly interrupted defense counsel while conducting the direct examination of his witnesses; and that the defendant was denied bail.
The defendant illustrates his complaint with a number of excerpts from the testimony as disclosed by the record.
During the defense counsel’s direct examination of Ms witness Henry Jackson, the witness was asked where the pedestrian Morris fell.
‘ ‘ Q. Did he go up in the air at all? A. No more than going up to Ms left after he was hit.
“The Court. Now, just a minute; you have been in this courtroom, you are under oath; people have testi-' fied up to this point that this man was thrown up above this car; if you don’t know what you are talking about I caution you, that if you testify falsely here, or if they have testified falsely, somebody is going to jail for perjury.
“The Witness. Yes, sir.”
Later the court again interrupted the direct examination of this witness.
“The Court. What? A. They were just sisters, I don’t know what her name is.
“The Court. They were what? A. Sisters.
“The Court. I don’t know what you think you are doing here in tMs court; but you are going to get a mighty rude awakening, if what I think you are doing is taking place. You started out with these girls at six o’clock in the morning, didn’t you? A. No, sir.”
On cross-examination of the defense witness James Smith, the court made the following statements:
“The Court. You start answering questions, or I will put you in jail until you start to answer. A. I can only answer the truth.
*414 “The Court. You weren’t intoxicated, were you? A. No.
“The Court. You knew what you were doing, didn’t you? A. Yes.
“The Court. Then tell the man when he asks you; you have been evading questions just long enough now. A. I can only tell him where we went.
“The Court. All right, you make up your mind, or I will make up mine.”
Later the court took charge of the cross-examination and made the following comment:
“The Court. You just soften up here; you are a little fresh. I don’t want any more of it; you just answer the questions. I don’t like your attitude towards this court at all. You are here to tell the truth, and we want to know the truth, and we are sorry it irritates you. You say you got out of the automobile, and the first thing you saw when you got out was the tower; that is what you said, wasn’t it? A. Yes, that is what I said.”
Still later the court interrupted the redirect examination of this witness.
“Q. Now, then, what the court wants to know is, what you mean by saying up from the tower, would it be north or south of the tower?
“The Court. No, I didn’t ask him that at all. I asked him where the automobile was when he got out of it. That is what I want to know, and that is not such an involved question, Mr. Counselor that it requires any help for the witness to answer, unless I may be off my rocker, and he is going to answer the question or he is going to jail; where was the automobile at the time you got out of it? A. Up from the tower is all I can say.
“The Court. Call the sheriff.”
Another witness was a high school girl, Ruby Harp *415 er, 17 years of age. During the direct examination the court interrupted to say:
“The Court. Counsel has asked you to speak up. I have asked you to speak up. You say you are not afraid. I can correct that for you very quickly, if you would rather go to jail until you decide to talk louder so we can hear you; you make up your mind whether you want to speak up or whether you don’t; what do you want to do? A. I will speak.”
After a study of the foregoing excerpts and the entire record, the very least that can be said is that the atmosphere of the trial was such as to fall far short of the plain requirements of the law.. Hence, it is the manifest duty of this court to reverse the judgment and remand the cause to the Court of Common Pleas for a retrial in conformity with the fundamental rights of every person charged with a crime.

Judgment reversed and ccmse remanded.

Weygandt, C. J., Middleton, Taet, Hart, Zimmerman, Stewart and Lamneck, JJ., concur.